IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal No. 3:18-CR-161

WALTER GRAVES,

    Defendant.

### MEMORANDUM OPINION

This matter is before the Court on the Defendant's MOTION TO DISQUALIFY JUDGE ROBERT E. PAYNE (the "Motion") (ECF No. 42), which, for the following reasons, will be denied.

### BACKGROUND

Walter Graves ("Graves") is charged in a one-count indictment with a bank robbery that occurred on May 13, 2015 in Petersburg, Virginia. ECF No. 3. The facts of the bank robbery are not at issue in the Motion and need not be addressed further.

Instead, the Motion focuses on a hearing held on April 22, 2019 (the "April 22 hearing"), at which the Court heard argument on Graves' MOTION FOR NEW COUNSEL (ECF No. 27).[1] Before the April

---

[1] By handwritten letter dated March 26, 2019, Graves requested that his counsel, Mr. Paul Gill, Esquire ("Gill") be replaced due to "wonton [sic] and ineffective counsel and defense strategy through 2 two unsatisfactory hearings involving my case already." ECF No. 27. Graves asserted that he "kn[e]w and fe[lt] for a fact that Mr. Gill will not represent me to the fullest, therefore I request and ask for a motion to fire Paul Gill" and for the Court to appoint another Public Defender. Id.

22 hearing, in his response to Graves' MOTION FOR NEW COUNSEL (ECF No. 27), Gill represented that his communications with Graves had "grow[n] briefer and more clipped as time passes," and that Graves had informed Gill that he (Graves) desired new counsel. ECF No. 29. Gill believed that Graves' MOTION FOR NEW COUNSEL (ECF No. 27) should be granted because of the breakdown in communications between him and Graves.

At the April 22 hearing, Graves made four arguments for why his attorney, Gill, should be replaced: (1) that Gill requested a "useless and baseless bond hearing";[2] (2) that Gill was "wonton [sic] and ineffective" for failing to call out allegedly perjured statements by the Assistant U.S. Attorney; (3) that Gill was "incompetent" for not recalling "important facts or dates pertaining to [his] case";[3] and (4) that Gill "admitted" on three

---

[2] At the April 22 hearing, Gill explained that the bond hearing occurred because Graves had "not signed a waiver at the initial appearance" and that the bond hearing was not at Gill's request. Apr. 22 Hr'g Tr. at 10 (ECF No. 40) (hereinafter, "Hr'g Tr.").

[3] Allegations (2) and (3) pertain, in part, to a prior hearing that the Court held on March 19, 2019 on DEFENDANTS' MOTION TO DISMISS the Indictment (ECF No. 15). As more fully explained in the Court's MEMORANDUM OPINION denying that Motion (ECF No. 25), the Government had been of the belief that certain state charges against Graves had been dismissed, when in reality, Graves had been acquitted of them. Graves' acquittal triggered the so-called "Petite Policy" of the Department of Justice, and required the Government to dismiss the federal bank robbery charge against Graves. Thereafter, the Government sought and received a waiver of the Petite Policy, and indicted Graves on the current federal charge. See Mem. Op. at 1-5 (ECF No. 25). Graves appears to have

2

occasions that Graves "needed a new lawyer, and that he, Gill was not putting forth his best defensive strategy."[4] See ECF No. 31-1; Hr'g Tr. at 4-9 (ECF No. 40). Graves asked the Court for "another professional lawyer with morals that's going to defend my case in the utmost professional quality defensive strategy that I and all indigent defendants are entitled to by lawyer [sic]." Hr'g Tr. at 8.

During the April 22 hearing, the Court heard largely from Graves and Gill. During the hearing and in assessing the arguments made by Graves, the Court commented, inter alia, that Graves "thinks he knows a lot about the law and doesn't, apparently, know much about it," Hr'g Tr. at 11; that Graves "has a contentious way about him," id.; that "he's going to treat whatever lawyer is appointed for him the same way," id.; that Graves "has to behave," id. at 13; that Graves' was "running his mouth" in criticizing Gill, id.; and that Graves' "attitude [is] animating [the] situation" requiring new counsel. Id. at 14.

The Court concluded that the breakdown in communication between Gill and Graves was "entirely, completely attributable to Mr. Graves who is, as best I can recall, one of the most

---

been of the view that he could no longer face federal bank robbery charges after the Government dismissed the charge the first time.

[4] Gill testified that he "certainly [did not] recall saying that [he] would deliberately tank [Graves'] case or anything of that measure." Hr'g Tr. at 12.

3

contentious, insulting defendants for whom the Court has appointed counsel," that he is "wrong about virtually everything he says," and that he was "thankless" towards Gill's representation. Hr'g Tr. at 21. However, after hearing the arguments, especially Gill's representation that the relationship was largely broken, the Court granted Graves' MOTION FOR NEW COUNSEL (ECF No. 27) by an ORDER (ECF No. 32) entered on April 23, 2019. See Hr'g Tr. at 21-23. The Court cautioned, however, that it had "every apprehension that the same bull-headed, contentious, arrogant, and mean-spirited conduct will be visited [by Graves] upon the other lawyer, and if it is, there will be no other lawyer because it is obvious to me that the entire fault here is Mr. Graves." Id. at 22. Thereafter, Mr. Theodore Bruns, Esquire ("Bruns"), was appointed as Graves' counsel on April 23, 2019 (Gill's representation was terminated that same day).

Then, the Court received a handwritten letter dated April 24, 2019 (i.e. one day after the Court granted Graves' MOTION FOR NEW COUNSEL) from Graves in which he stated that "[u]pon further review, thought, and time, I Graves request and ask for the reinstatement of my former lawyer Paul Gill so that the case may proceed in a timely manner." ECF No. 33. Although Gill's representation had terminated at that point, the Court ORDERED that Gill file a response in which he was to explain whether he was willing to be reinstated as Graves' attorney. ECF No. 34.

Gill responded, explaining that, when he (Gill) visited Graves to discuss Graves' April 24 letter (ECF No. 33), Graves "advised (paraphrasing somewhat) that whatever fleeting thoughts he had as represented by what was filed as ECF No. 33, he unequivocally did NOT want undersigned to represent him again, and he was mistaken to have sent the letter in." ECF No. 37 at 1. The Court denied Graves' request to reinstate Gill. ECF No. 38.

To further confuse matters, on May 1, 2019, the Court received another letter from Graves, dated April 22, 2019[5] (i.e. the day the Court held the hearing on the MOTION FOR NEW COUNSEL), in which Graves moved "for the Removal of federal judge Payne from my upcoming trial," due to conduct at the April 22 hearing.[6] ECF No. 35. Because Bruns had recently been appointed as Graves' counsel, the Court denied Graves' request in ECF No. 35 (which had been made pro se), and ORDERED Bruns to review the transcript of the

---

[5] It is not clear why this letter was not received for more than a week after it was dated by Graves, but the Clerk's Office stamp clearly indicates that it was RECEIVED on May 1, 2019. ECF No. 35.

[6] Among other things, Graves wrote that he was "constantly interrupted by judge Payne who selfishly exhibited defamatory assaults at me, Graves attempting to 'sidetract' [sic] my testimony" and that "judge Payne exhibited profane biased prejudiced predetermined opinions and comments about my character that were borderline 'racist rants' spoken by a supposedly impartial judge." ECF No. 35.

April 22 hearing and determine whether it was appropriate to refile a Motion for Removal. ECF No. 38.

After reviewing the April 22 transcript, Graves (through Bruns) filed the MOTION TO DISQUALIFY JUDGE ROBERT E. PAYNE (ECF No. 42). The Government responded in opposition. ECF No. 43. Graves did not file a reply brief.[7] The matter is now ripe.

**DISCUSSION**

Although Graves' Motion cites to both 28 U.S.C. § 144 and 28 U.S.C. § 455 for judicial disqualification, he states that "[f]or the purpose of this motion, Mr. Graves relies upon the language of 28 U.S.C. 455(a)." ECF No. 42 at 2. Accordingly, the Court only considers this ground in deciding the Motion.[8]

28 U.S.C. § 455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The test for disqualification under this statute is an "objective" one, asking whether "a reasonable outside observer, aware of all the facts and circumstances of [the] case, would. . .question" the judge's impartiality. United States v. DeTemple,

---

[7] The Court had given Graves until June 21, 2019 to file a reply brief. ECF No. 41.

[8] In any event, 28 U.S.C. § 144 requires that a party alleging bias by a judge to "file[] a timely and sufficient affidavit" detailing the "personal bias or prejudice" of the judge. Graves has not done so. See ECF No. 43 at 6 n.6.

162 F.3d 279, 287 (4th Cir. 1998). The statute certainly "does not require a judge to recuse himself because of 'unsupported, irrational, or highly tenuous speculation.'" Id. (quoting In re United States, 666 F.2d 690, 694 (1st Cir. 1981)).

In Liteky v. United States, the Supreme Court of the United States held that the so-called "extrajudicial source" doctrine, or factor,[9] applied to motions to disqualify a judge under Section 455(a). 510 U.S. 540, 554-56 (1994); Belue v. Leventhal, 640 F.3d 567, 572-76 (4th Cir. 2011). Under this "factor," a proper motion to disqualify a judge must (almost always)[10] be based on bias (or appearance thereof) that arises from a source outside of the judicial proceedings. See Liteky, 510 U.S. at 545; Belue, 640 F.3d at 572.

What does not count to establish bias or partiality are (1) "judicial rulings alone"; or (2) "opinions formed by the judge on

---

[9] While the Supreme Court used the term "doctrine," it also said that "it would be better to speak of the existence of a significant (and often determinative) 'extrajudicial source' factor," rather than a "doctrine." Liteky, 510 U.S. at 554-55 (emphasis in original). The Court will use the term "factor."

[10] The Supreme Court held that an extrajudicial source was neither "a necessary condition for 'bias or prejudice' recusal, since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice. Nor is it a sufficient condition for 'bias or prejudice' recusal, since some opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will not suffice." Liteky, 510 U.S. at 554 (emphasis in original). However, parties "have to meet a high bar to achieve recusal based on in-trial predispositions." Belue, 640 F.3d at 573.

7

the basis of facts introduced or events occurring in the course of the current proceedings." Liteky, 510 U.S. at 555. This is true of the second factor even where a judge's remarks are "critical or disapproving of, or even hostile to, counsel, the parties, or their cases" unless they reveal an "opinion that derives from an extrajudicial source" or "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." Id. As the Supreme Court held:

> Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

Id. at 555-56.

Liteky and Belue establish that disqualification motions based on in-court conduct by a judge are to be rarely granted. Simply put, a party seeking to disqualify a judge for in-court conduct faces a tall task. As Judge Wilkinson so aptly put it: "[W]hile recusal motions serve as an important safeguard against truly egregious conduct, they cannot become a form of brush-back pitch for litigants to hurl at judges who do not rule in their favor." Belue, 640 F.3d at 574. It is now appropriate to consider whether Graves has met his burden.

8

The Government accurately points out that Graves' Motion does not raise "any extrajudicial matter," but rather is based solely on in-court comments made during the April 22 hearing. ECF No. 43 at 8.[11] And, says the Government, any harsh comments by the Court during the April 22 hearing were in direct response to Graves, who:

> misrepresented the facts, numerous times; interrupted and argued with the Court; ignored the questions and useful advice the Court provided; attempted to elevate minor matters to major offenses; and went out of his way to avoid and ignore counsel known to the Court to be diligent and dedicated.

ECF No. 43 at 8. The Court's comments, argues the Government, "in no way[] demonstrated a wrongful or inappropriate prejudice against defendant, or suggested the Court was incapable of rendering fair judgment." Id.

The Government is correct. Reviewing the April 22 hearing transcript and Graves' Motion, the record shows no extrajudicial source of the alleged bias or prejudice by the Court (nor does Graves even argue that). At the April 22 hearing, the Court gave Graves a full and fair opportunity to present his case for new counsel. What transpired was that Graves demonstrated, inter alia,

---

[11] It is worth noting that counsel for Graves rejects the notion from Graves' pro se letter (ECF No. 35) that the Court engaged in "borderline 'racist rants'" at the April 22 hearing. ECF No. 42 at 2 n.1. Graves, however, appears to be of the view that the transcript is "not. . .a complete accounting of the hearing." Id. There is no support for that assertion.

9

fundamental misunderstandings about his case and the law, see Hr'g Tr. at 6-7;[12] misrepresented the conduct of Gill at a prior hearing, see id. at 7-8; engaged in an "ad hominem attack" against Gill, see id. at 16; and did not raise "any tactic, strategy, or evidentiary pursuit" about which Graves and Gill were in disagreement. See id. In short, the Court concluded that it was Graves alone who caused the breakdown in the attorney-client relationship. See id. at 21-23.

To be sure, Graves' conduct resulted in statements of frustration by the Court. See, e.g., Hr'g Tr. at 21 (referring to Graves as "one of the most contentious, insulting defendants for whom the Court has appointed counsel"). However, the transcript also clearly reveals that the Court's statements to Graves were a direct result of his in-Court conduct. See Hr'g Tr. at 16 ("I'm attributing [the relationship breakdown] to the defendant by listening to the way he recited things here in court in a contentious, argumentative way. I'm basing it on the rather ridiculous statements he made in what will be called Court Exhibit 1 which make no sense and show an irrational mind, a delusional

---

[12] For example, Graves described the bond hearing as "useless." Hr'g Tr. at 7. The Court tried to explain, however, that often times "lawyers use the detention hearing as a way to get out evidence about the case so they can have an early start on the case, because they don't have the evidence, and you don't either." Id. at 6. To this, Graves responded that "I do have it," apparently referring to evidence. Id.

mind, and improper conduct on the part of a defendant who has nothing to lose. . . .") (emphasis added). While the principal predicate for the Court's frustration was Graves' comments and conduct, the Court was concerned that Graves was asking to jettison the services of a highly competent lawyer.

Any in-Court "expressions of impatience, dissatisfaction, annoyance, and even anger" are not grounds for the Court to disqualify itself. See Liteky, 510 U.S. at 555-56. Graves has raised no plausible argument that any of the Court's statements "relied upon knowledge acquired outside such proceeding[] nor. . .displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." Id. There is no "particularly egregious conduct" or "singular and startling facts," like a judge pre-judging a case or directing profanities at the defendant. See Belue, 640 F.3d at 573 (citing examples). A reasonable, outside observer who knew all the facts and circumstances of the case would not view the Court as have any bias towards Graves, especially in perspective of Graves' conduct at the April 22 hearing. See DeTemple, 162 F.3d at 287.

And, what is more, the fact of the matter is that, following the April 22 hearing, the Court actually granted Graves' MOTION FOR NEW COUNSEL and appointed him new counsel as he requested. That fact further belies any credible assertion that the Court is biased against Graves.

In sum, Graves' Motion rests on in-Court comments by the Court. These comments demonstrate no bias towards Graves, but illustrate the Court's frustration with Graves' conduct during the April 22 hearing and his treatment of, and rejection of, a very fine lawyer, Mr. Paul Gill. The comments do not support the granting of Graves' MOTION TO DISQUALIFY JUDGE ROBERT E. PAYNE (ECF No. 42).

## CONCLUSION

For the reasons set forth above, the Defendant's MOTION TO DISQUALIFY JUDGE ROBERT E. PAYNE (ECF No. 42) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 22, 2019