IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                              Criminal No. 3:18CR161

WALTER GRAVES

**MEMORANDUM OPINION**

Walter Graves, a federal inmate proceeding pro se, has filed a motion pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion," ECF No. 112). For the reasons that follow, the § 2255 Motion will be denied.[1]

**I. PROCEDURAL HISTORY**

Graves was indicted for robbing the Bank of Southside Virginia on May 13, 2015. (ECF No. 3, at 1.) Thereafter, the Court granted Graves' MOTION FOR NEW COUNSEL (ECF No. 27), because of a breakdown in communication between Graves and his appointed counsel, Paul Gill. (ECF No. 32.) The Court appointed Theodore Bruns to represent Graves. In a subsequent Memorandum Opinion addressing Graves' motion to disqualify the undersigned, the Court recounted its observations from the hearing on the MOTION FOR NEW COUNSEL and observed that:

> the breakdown in communication between Gill and Graves was "entirely, completely attributable to Mr. Graves who

---

[1] The employs the pagination assigned by the CM/ECF docketing system. The Court corrects the spelling, capitalization, and punctuation in the quotations from Graves' submissions.

> is, as best I can recall, one of the most contentious, insulting defendants for whom the Court has appointed counsel," that he is "wrong about virtually everything he says," and that he was "thankless" towards Gill's representation. Hr'g Tr. at 21.

(ECF No. 45, at 3-4.)

On August 23, 2019, following a jury trial, Graves was convicted of bank robbery. (ECF No. 60.) On December 12, 2019, the Court sentenced Graves to 137 months of imprisonment. (ECF No. 81, at 2.) Graves appealed. (ECF No. 86.) On February 17, 2021, the United States Court of Appeals for the Fourth Circuit affirmed Graves' criminal judgment.[2] (ECF No. 106.)

On January 24, 2022, Graves filed his § 2255 Motion. (ECF No. 112.) In the § 2255 Motion, Graves contends that he was denied the effective assistance of counsel.

| | |
|---|---|
| Claim One | "Attorney Ted Bruns never gave me Graves a disposition (copy) or never showed me a copy the prosecution's evidence (fingerprint). . . . I was never given the opportunity to look at/identify whether the evidence that the jury saw/got was relatable to me Graves or not." (Id. at 4.) |

Claim Two is essentially identical to Claim One.

| | |
|---|---|
| Claim Two | "Attorney Ted Bruns withheld <u>vital</u> information from me Graves, a copy of the fingerprint analysis that was showed to the jury on the day of my jury trial, but never showed to me Graves, by Bruns, <u>before</u>, <u>during</u>, or <u>after</u> my trial." (Id. at 5.) |

---

[2] Graves' MOTION TO SUPPLEMENT THE RECORD on appeal (ECF No. 105) will be denied as moot.

2

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance facet of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697. That is the case here.

In conjunction with its response, the Government submitted an affidavit from Graves' trial counsel Theodore Bruns. (ECF No. 115-2.) Mr. Bruns, swears, in pertinent part:

3

After reviewing the evidence in this case, I was aware that there was an extremely high probability that DNA on a shirt that appeared to be used by the robber in the Bank of Southside Virginia robbery was defendant's, that Mr. Graves had admitted to being in the area of the Bank of Southside Virginia shortly before the robbery, and that several individuals were prepared to come to court to identify Mr. Graves as the robber in this case. I understood and discussed with Mr. Graves that each of these pieces of evidence alone was problematic for Mr. Graves' case and was particularly damaging collectively.

I was further aware that an additional significant piece of evidence in the case was a fingerprint that was located on the demand note provided by the robber in this case. I discussed several times with Mr. Graves that a fingerprint expert had matched that latent print to a known print of Mr. Graves. As Mr. Graves insisted he had not been involved in the robbery, I discussed with Mr. Graves several times that if the jury accepted the expert's analysis that would be significantly damaging to his defense.

In meeting with Mr. Graves in preparation for his trial, I shared with him the photographs from the fingerprint expert comparing the latent print on the note with the known prints of Mr. Graves. I may have also shown him the actual report from the expert, though I cannot recall whether I did nor not. I am certain, however, that I discussed with Mr. Graves on several occasions the content of the report and the conclusions of the expert. I am also certain that I shared with Mr. Graves any bit of discovery I received that he requested to see.

Because I was aware of the potentially damaging impact of the fingerprint expert's testimony, I met with that expert to discuss her report. During that meeting, the expert discussed with me certain challenges to the validity of fingerprint evidence. After my meeting with the expert, I met with Mr. Graves and reviewed with him the information I had gleaned from my meeting with the fingerprint expert and discussed my plans for addressing the fingerprint evidence at trial. Mr. Graves expressed no concern with or objection to that plan.

At trial, I followed the plan I had discussed with Mr. Graves and cross-examined the expert on the challenges by the National Academy of Sciences to

4

> fingerprint evidence. Mr. Graves did not indicate to me any dissatisfaction with and did not disagree with my treatment of the fingerprint evidence following the trial.

(ECF No. 115-2, at 1-2 (paragraph numbers omitted).)

Graves disputes that Mr. Bruns provided him with a copy of the actual fingerprint evidence, whether that was a copy of the latent prints lifted from the demand note,[3] Graves' fingerprint exemplars provided to the Government,[4] or any written conclusions from Wendy Travis, the government's expert witness in latent fingerprint analysis. However, Graves does not dispute that Mr. Bruns discussed with him "on several occasions the content of the report and the conclusions of the expert." (ECF No. 115-2, at 1.) Nor does Graves dispute that Mr. Bruns shared with him "any bit of discovery [Mr. Bruns] received that he requested to see." (Id.) Given these circumstances, even if one were to accept Graves' allegations as true where they conflict with Mr. Bruns' statements, Graves fails to demonstrate that Mr. Bruns performed deficiently. In fact, Mr. Bruns' affidavit, which the Court credits, shows that Graves' statements, which the Court does not credit, lack any substantive merit.

---

[3] Government Exhibit 7. (ECF No. 115-1, at 185.)

[4] Government Exhibit 9. (ECF No. 115-1, at 191.)

5

Moreover, Graves has utterly failed to articulate how he was prejudiced. Graves fails to explain how the result of the trial would have been any different if Mr. Bruns has shown him fingerprint evidence that he was allegedly denied access to. The evidence of Graves' guilt was overwhelming. Graves fails to demonstrate deficiency or prejudice.

### III. CONCLUSION

Graves' claims and the action will be dismissed. The § 2255 Motion (ECF No. 112) will be denied. A certificate of appealability will be denied.

The Clerk is directed to send a copy of the Memorandum Opinion to Graves and counsel for the Government.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 22, 2024